UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL D. CROOKS,

       Plaintiff,

       v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, et.al,

       Defendants.

Case No. 2:15-cv-2234
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

This matter is before the Court on the Motions for Summary Judgment of Defendants State Farm Mutual Automobile Insurance Company ("State Farm") (ECF No. 32), and Allstate Property and Casualty Insurance Company ("Allstate") (ECF No. 33). Plaintiff opposes these motions (ECF Nos. 35, 36), and also moves to amend his Complaint (ECF No. 37). For the reasons that follow, Defendants' Motions for Summary Judgment are **GRANTED**. Plaintiff's motion for leave to file an amended Complaint is **DENIED** as futile.

## I.    BACKGROUND

On April 15, 2015, Plaintiff Michael D. Crooks ("Crooks" or "Plaintiff") filed this action in state court against State Farm and Allstate, asserting a number of state law claims. Plaintiff is a citizen of Ohio. Defendants State Farm and Allstate are both Illinois corporations with their principal places of business in Illinois. Defendants removed the action to this Court on the basis of diversity jurisdiction. This action is related to a lawsuit Plaintiff filed on July 28, 2009, in the Court of Common Pleas in Monroe County, Ohio, *Michael D. Crooks v. Darlene M. Palmer*, Monroe County Court of Common Pleas, Case No. 09-cvc-200 (the "Injury Case").

The Injury Case arose out of a July 31, 2007 motor vehicle accident involving Plaintiff and Ms. Palmer. Allstate was Ms. Palmer's liability insurer, and State Farm was Plaintiff's underinsured motorist carrier ("UIM"). Ms. Palmer and Allstate did not contest liability for the accident, but the parties litigated the amount of damages. Prior to trial in the Injury Case, State Farm paid $13,796.69 in medical bills to or on behalf of Plaintiff under the medical payments coverage provision of his policy for medical treatment that occurred from February 2008 until May 2009. Pursuant to an agreement approved and entered by the court, Plaintiff agreed to dismiss his claim for uninsured/underinsured motorist coverage against State Farm, and State Farm agreed to dismiss its cross-claims for subrogation against Ms. Palmer and Allstate, without prejudice to refiling. (Judgment Entry, ECF No. 31-2, Exh. 2 at 1.) State Farm also agreed to pay UIM according to the terms of its policy in the event a jury verdict exceeded the limits of Ms. Palmer's coverage, and agreed to accept in full payment of its right to subrogation, "2/3 of the amount of the jury's determination, up to 2/3s of the total amount of medical payments made by State Farm through the date of the verdict." (*Id.*) As part of the agreement between Plaintiff and State Farm memorialized in the Judgment Entry, Plaintiff waived any claim to pre-judgment interest up to the date of final judgment, "as the contractual right to underinsured motorist coverage has not accrued prior to that date." (*Id.*) Accordingly, the Court dismissed State Farm from the Injury Case.

In October 2011, the Injury Case went to trial on the issue of damages only. The jury returned a verdict in favor of Plaintiff in the amount of $355,941.50. (Judgment Entry, ECF No. 31-3, Exh. 3 at p. 1.) Specifically, the jury awarded Plaintiff $18,035.93 for past medical expenses; $106,208.00 for future medical expenses; $201,697.57 for past pain and suffering;

$25,000.00 for future pain and suffering; and $5,000.00 for Plaintiff's past inability to perform normal activities. (*Id.*)

Allstate defended its insured, Ms. Palmer at trial in the Injury Case. After receiving the jury's verdict, Plaintiff calculated "he had a potential judgment against [Ms. Palmer] in the amount of . . . $338,117.15." (Satisfaction of Judgment and Release of all Claims, Judgment Entry, ECF No. 31-4, Exh. 4 at p. 2.) Although Allstate was only contractually liable to pay the policy limit of $25,000, Allstate "made a decision to pay all or a portion of the potential total judgment against [Ms. Palmer] despite not being contractually obligated," and paid the Plaintiff $320,000 on behalf of Ms. Palmer in full and final satisfaction of all claims. (*Id.*)

The Satisfaction of Judgment and Release of All Claims between Crooks, his heirs, executors, or administrators ("Releasors") and Ms. Palmer, Allstate, and its agents ("Releasees"), was entered on March 30, 2012, and provides in pertinent part:

> Releasors understands [sic] the Court has discretion concerning prejudgment interest and this compromised settlement of judgment and release covers all injuries, damages and losses determined by the jury as well as pre- and post-judgment.
>
> The amount stated herein is the consideration for this Satisfaction of Judgment and Release of All Claims and Releasors voluntarily accept said sum for the purpose of making a full and final compromise of the potential judgment.
>
> This is a complete satisfaction of all claims, and there are no written or oral understandings or agreements, directly or indirectly with this release or compromise of potential judgment that are not incorporated herein.
>
>                     \*\*\*
>
> This Satisfaction of Judgment and Release of All Claims, duly executed by such attorney on behalf of Releasors and by such attorney(s) on behalf of Releasees dismissing the Action at Case No. 2009-200 against the Releasees with prejudice. Releasors hereby acknowledge and confirm he has authorized and directed his attorney to execute and file said Satisfaction of Judgment and Release of All Claims on his behalf.

This agreement shall be binding upon and inure to the benefit of the Releasors and Releasees.

(Satisfaction of Judgment and Release of all Claims, Judgment Entry, ECF No. 31-4, Exh. 4 at pp. 2-3.)

As part of the final post-trial settlement, State Farm paid Plaintiff $76,029, representing all of the applicable UIM coverage (the $100,000 UIM limit less the $25,000 limit of Ms. Palmer's Allstate liability policy, as well as post-judgment interest), and waived any right to subrogation for the payments made under Plaintiff's medical payment coverage. (Satisfaction of Judgment and Release of all Claims, Judgment Entry, ECF No. 31-4, Exh. 4 at pp.1-2.) State Farm also paid an additional $2,898.85 based upon the jury's verdict, representing the additional medical expenses payable under the medical coverage provisions of Plaintiff's policy. (Stip. of Facts, ECF No. 31, ¶ 8.) Thus, Plaintiff's total recovery was $398,928.01.

Plaintiff brought suit in the case *sub judice* against both Allstate and Allstate insurance adjuster Ferooz Aziz, and against State Farm, State Farm insurance adjuster Keisha Ratkiska, and State Farm employees John Doe 1 through 5, alleging various tort and contract claims based on the alleged conduct of the insurance companies in the administration of the insurance policies prior to the trial in the Injury Case. Plaintiff also made various allegations directed towards the interactions of the insurance companies and their adjusters. Plaintiff's Complaint alleged, based on information and belief, that Allstate and Allstate adjuster Aziz had sufficient information to offer Ms. Palmer's "liability policy limits of $25,000 prior to forcing Plaintiff to file a lawsuit." (Compl., ECF No. 4, at p. 5, ¶ 17.) Plaintiff's Complaint further alleged, based on information and belief, that State Farm, State Farm adjuster Ratkiska and/or State Farm John Doe employees had sufficient information "to pay the policy limits of Plaintiff's medical payment coverage and underinsurance coverage prior to forcing Plaintiff to prepared [sic] for and go to trial in and

around October 24, 2011." (Compl., ECF No. 4, at p. 5, ¶ 18.) Plaintiff also alleged, based on information and belief, that "Allstate and Defendant Aziz ignored evidence of Plaintiff's injury, evaluated the Plaintiff's claims with a prejudice towards Allstate, evaluated the Plaintiff's claim as resolving within four months of the accident and retained a medical doctor, Dr. Joseph Schlonsky, to give opinion testimony consistent with its' [sic] general business practice." (Compl., ECF No. 4, at p. 5-6, ¶ 20.) In his breach of contract claim (Count Two) Plaintiff alleged that State Farm, State Farm adjuster Ratkiska, and/or State Farm John Doe Employees wrongfully adopted Allstate and/or Allstate adjuster Aziz's "theory that Plaintiffs injuries, damages and losses resolved/ceased to exist within four months of the accident after it/they [Allstate and its adjuster and employees] determined the Plaintiff's injuries, damages and losses existed/continued until at least May 6, 2009." (Compl., ECF No. 4, at p. 8-9, ¶ 31.) Ultimately, on July 2, 2015, the parties stipulated that adjusters Aziz and Ratkiska should be dismissed as party defendants, and they were dismissed from the case. (Stip. of Dismissal, ECF No. 20.)

On February 25, 2015, the parties filed a joint Stipulation of Facts (ECF No. 31) setting forth the chronology and facts of their actions and agreements in the settling of the underlying Injury Case.[1] In pertinent part, the Stipulation of Facts provides the following:

> 4. At the time of the July 31, 2007 accident, Crooks was insured by State Farm Mutual Automobile Insurance Company under policy 5987-664-35L. The policy contained medical payments coverage with a $50,000 limit and underinsured motorist ("UIM") coverage with limits of $100,000 for each person and $300,000 for each accident. Before the trial of the prior lawsuit, State Farm paid $13,796.69 to or on behalf of the Plaintiff

---

[1] Attached to the Stipulation of Facts are copies of the Judgment Entry filed with the Monroe County Court of Common Pleas on February 25, 2011 (ECF No. 31-2, Exh. 2); the Court of Common Plea's Judgment of February 14, 2012, overruling Ms. Palmer's post-judgment Motion for a New Trial, or in the Alternative, Request for Remittitur (ECF No. 31-3, Exh. 3); and a copy of the March 30, 2012 Satisfaction of Judgment and Release of All Claims concerning Allstate and Ms. Palmer entered by the Court of Common Pleas that also confirms State Farm's payment to Plaintiff of $76,029.16. (ECF No. 31-4, Exh. 4.)

under the medical payments coverage of his State Farm policy for Crook's medical treatment that occurred from February 2008 until May 5, 2009. State Farm's medical payments payment was based on its own determination.

\*\*\*

8.    In November 2011, State Farm issued an additional Medical Payments coverage check to Plaintiff in the amount of $2,898.85. This amount represented the medical expenses awarded to Plaintiff by the jury which were incurred within three years after the July 31, 2007, accident but which had not previously been paid by State Farm.

\*\*\*

10.    In March, 2012, State Farm settled Crooks' claim against it for $76,029.16, representing its $75,000 net underinsured motorist limit (the gross UIM limit of $100,000 less Allstate's $25,000 limit for Palmer) plus $1,029.16 in post-judgment interest.

11.    Allstate settled Crooks' remaining claims for $320,000.

12.    Exhibit 4 attached hereto is a true and correct copy of a Satisfaction of Judgment and Release of All Claims filed in the prior lawsuit on March 30, 2012, concerning Palmer and Allstate. The entry also confirms the payment by State Farm to Plaintiff of $76.029.16.

(Stip. of Facts, ECF No. 31, pp.1-3.)

This matter is before the Court on Allstate and State Farm's motions for summary judgment. Plaintiff has also filed a motion to amend his complaint. Plaintiff alleges that he suffered a number of damages "[a]s a direct and proximate result" of Defendants' conduct, including the following:

a.    Sustained aggravation and inconvenience, emotional distress, anger, anguish, chagrin, depression, disappointment, embarrassment, fear, fright, grief, horror and/or humiliation;

b.    Sustained costs and expenses;

c.    Was forced to try his claim for damages which caused mental stress, inconvenience, anguish, embarrassment, grief, humiliation and anxiety;

6

d. Was unable to receive the proper medical treatment because the medical payment coverage was wrongfully denied thus causing his injuries to worsen to the point of needing surgery; and

e. Sustained costs for attorneys and net economic losses.

(Compl. ¶53(a)-(e), ECF No. 4, pp. 12-13.) Plaintiff seeks relief in the form of compensatory, expectancy and consequential damages as well as punitive damages. (*Id.*)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). However, the Sixth Circuit has explained that, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 257).

A genuine issue of material facts exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 486 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is '"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."' *Hamad v. Woodcrest Condo Ass'n,* 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

## III.  ANALYSIS

### A. Count One, Tortious Interference with Contract against Allstate

Plaintiff alleges that Allstate tortiously interfered with Plaintiff's State Farm UIM policy. The gist of his allegation is that Allstate has "a general business practice[] of purposely preventing plaintiffs, including Plaintiff in this matter, from accessing their underinsurance through ignoring medical evidence." (ECF No. 36, p. 3.) Plaintiff makes the following allegations in his Complaint:

> 15.  From July 31, 2007 until October 27, 2011 Allstate was provided more than enough medical treatment information concerning Plaintiff's injuries, damages and losses proximately caused by Darlene Palmer to offer Darlene Palmer's liability policy limits of $25,000 prior to forcing Plaintiff to file a lawsuit.

***

> 25.  Defendant Aziz and Allstate knew of the existence of the Plaintiff's contract of insurance with State Farm for underinsurance and medical payment coverage.

> 26.  Based on information and belief, Defendant Aziz and Allstate knew or should have known that State Farm, Defendant Ratkiske and/or John Doe Employees paid for medical treatment of the Plaintiff through May of 2009, as such, Defendant Aziz and Allstate knew or should have known

8

State Farm, Defendant Ratkiske and/or John Doe Employees had determined that the Plaintiff's injuries did not resolve within four months; and

27. Despite knowing the Plaintiff's damages were in excess of its first-party insured's $25,000 policy limits prior to July 31, 2009, knowing the claim was worth in excess of the Plaintiff's underinsurance coverage prior and knowing State Farm, Defendant Ratkiske and/or John Doe Employees determined that all treatments through May 5, 2009 were related to the July 31, 2007 motor vehicle accident, Defendant Aziz and Allstate intentionally attempted to procure/cause State Farm, Defendant Ratkiske and/or John Doe Employees to breach its contract with the Plaintiff; and Defendant Aziz and Allstate did procure/cause State Farm, Defendant Ratkiske and/or John Doe Employees to breach its contract with the Plaintiff when State Farm, Defendant Ratkiske and/or John Doe Employees adopted Defendant Aziz and Allstate's general business practice of evaluating Plaintiff's injuries, damages and losses as resolving in four months or less despite overwhelming evidence against said evaluation.

28. Based upon the aforementioned knowledge of Defendant Aziz and Allstate he/it lacked any justification for evaluating the Plaintiff's injuries to resolve within four months of the accident and retaining Dr. Joseph Schlonsky to author a report consistent with his/its general business practice of negligently, recklessly, willfully, wantonly and/or intentionally ignoring evidence, evaluating claims with a prejudice toward Allstate's interest, evaluating a vast majority of injury claims made against overwhelming evidence against said evaluation, and thus was improper; as such Defendant Aziz and Allstate interfered with the Plaintiff's ability to access his underinsurance coverage and medical payment coverage.

29. As a direct and proximate result of the actions and/or inactions of the Defendant Aziz and Allstate as is set forth in this Court, Plaintiff was injured and incurred damages as hereinafter described.

(Compl., ECF No. 4, pp. 4, 7-8). Thus, Plaintiff asserts that Allstate forced him to file a lawsuit by not paying the limits of Ms. Palmer's policy, and interfered with Plaintiff's ability to access his own underinsurance coverage and medical payment coverage with State Farm.

Plaintiff does not dispute that, in order to settle the Injury Case, Plaintiff and Allstate, through counsel, filed a Satisfaction of Judgment and Release of All Claims ("Release") with the Court. (ECF No. 36, p. 4.) Further, Plaintiff does not dispute that, "[a]lthough not obligated to

do so, the Defendant [Allstate] agreed to pay all or a portion of the 'potential judgment' against Ms. Palmer." (ECF No. 31-4.)  Plaintiff does not dispute that in consideration of $320,000, Plaintiff agreed to "fully and forever release, acquit and discharge" Allstate "from any and all actions, cause of actions, claims or demands as it relates to the injuries and damages determined by the jury to be related to said motor vehicle accident . . . ."  Additionally, Plaintiff does not dispute that the Release provides that "[t]his is a complete satisfaction of judgment and *release of all claims*, and there are no written or oral understandings or agreements, directly or indirectly with this release or compromise of 'potential judgment' that are not incorporated herein.'" (ECF No. 36, p. 5 (*emphasis supplied*).)  However, in the case *sub judice*, Plaintiff now asserts that the words "potential judgment" used in the Release limited the Release to only the immediate claims in the Injury Case, and the settlement of pre- and post-judgment interest.  (ECF No. 36, p. 10.) He further asserts that the "Release is notably silent with regard to any action, cause of action, claim or demand the Plaintiff may have had with regard to the Defendant's tortious interference with the Plaintiff's underinsurance contract with State Farm." (ECF No. 36, p. 8.)

Allstate takes the position that the broad language in the Release stating that "[t]his is a complete satisfaction of judgment and release of all claims" is an absolute bar under Ohio law to a later action on "any claim encompassed within the release."  *See Hill v. McCrabb*, 19 Fed. App'x. 314, 315 (6th Cir. 2001); *Haller v. Borror Corp.*, 50 Ohio St. 3d 10, 552 N.E.2d 207, 210 (1990). (ECF No. 33, at p. 5.)  Allstate's position is well-taken.  Under Ohio law, a release is a contract that is favored in the law to encourage the private resolution of disputes.  *Lewis v. Mathes*, 161 Ohio App.3d 1, 7, 829 N.E.2d 318 (2005).  A release of a cause of action ordinarily acts as a complete bar to any later action on any claim encompassed within the release.  *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 552 N.E.2d 207 (1990).  As this Court has held,

Since a release is a kind of contract, the rules generally applicable to contracts, such as the requirement of an offer and acceptance, apply. *See Noroski v. Fallet*, 2 Ohio St.3d 77, 79, 442 N.E.2d 1302 (1982). Where a contract is clear and unambiguous, its interpretation is a matter of law. *Latina v. Woodpath Development Co.*, 57 Ohio St.3d 212, 214, 567 N.E.2d 262 (1991); *Lewis*, 161 Ohio App.3d at 8, 829 N.E.2d 318 (where release is clear and unambiguous, its interpretation is a matter of law). In construing the terms of a contract, the primary objective is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Serv. Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999). The intent of the parties is presumed to reside in the language they choose to employ in their agreement. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 362, 678 N.E.2d 519 (1997). Absent fraud or mutual mistake, broadly-worded releases are generally construed to include all prior conduct between the parties, even if the scope of such conduct or its damage is unknown to the releaser. *Denlinger v. City of Columbus, Ohio Public Schools*, No. 00AP-315 (10th Dist. unreported), 2000 WL 1803923 *5 (Ohio App. Dec. 7, 2000).

*Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F.Supp.2d 722, 734-35 (S.D. Ohio 2009).

Plaintiff has made no claim that the Release is the product of fraud or mutual mistake. Thus, the Court must determine whether the language of the Release in this case is clear and unambiguous. Under Ohio law, "common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 245-46 (1978), 374 N.E.2d 146. (citing *First National Bank v. Houtzer* (1917), 96 Ohio St. 404, 406-407, 117 N.E. 383; *Garlick v. McFarland* (1953), 159 Ohio St. 539, 545, 113 N.E.2d 92; *Olmstead v. Lumbermens Mutl. Ins. Co.* (1970), 22 Ohio St.2d 212, 216, 259 N.E.2d 123; *Jolliff v. Hardin Cable Television Co.* (1971), 26 Ohio St.2d 103, 106-107, 269 N.E.2d 588). "Furthermore, where the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." (*Id.*, at p. 246, citing paragraph one of

the syllabus in *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393; *Fidelity & Casualty Ins. Co. v. Hartzell Bros. Co.* (1924), 109 Ohio St. 566, 569, 143 N.E. 137).

Plaintiff asks the Court to read the Release narrowly and restrict its terms to a "release of any and all actions, causes of action, claims or demands as it related *to the verdict and/or post-judgment interest*." (ECF No. 36, at p. 11.) (*Plaintiff's emphasis*).  However, that would be a strained reading, and would require the Court to find "an intent not expressed in the clear language employed by the parties."  *Alexander*, 53 Ohio St.2d at 246.  In this case, the Release is styled a Satisfaction of Judgment and Release of all Claims, and begins by giving "notice to the Court that the judgment entered on October 27, 2011 for the Plaintiff has been satisfied in full." The Release states that "[t]his full satisfaction of judgment includes an award for prejudgment interest."  (ECF No. 31-4, Exh. 4, at p. 1.)  Plaintiff ("Releasors") and Allstate agreed that in consideration of Allstate's payment of $320,000, "Releasors voluntarily accept said sum for the purpose of making a full and final compromise of the potential judgment."  (*Id*. at p. 2.)  The Release states that Mr. Crooks understands Ms. Palmer's (together with Allstate, "Releasees") available liability coverage limit was $25,000, and Allstate was not contractually obligated to pay above that limit.  As a result of Allstate's decision to make the $320,000 payment, Plaintiff agreed to "fully and forever release, acquit and discharge" Releasees "*from any and all actions, cause of actions, claims or demands*" related to the motor vehicle accident. (*Id*.) (*emphasis supplied*). It further provides that "[t]his is a *complete satisfaction of judgment and release of all claims*, and there are no written or oral understandings or agreements, directly or indirectly with this release or compromise of potential judgment that are not incorporated herein."  (*Id*., at p. 3) (*emphasis supplied*).   It is not disputed that any alleged tortious interference with Plaintiff's insurance contract would have arisen from the administration of the insurance policy preceding

the trial in the Injury Case. Plaintiff has provided no evidence to support his assertion that a cause of action for tortious interference against Allstate is somehow exempted from the words "any and all actions, cause of actions, claims or demands." On the other hand, Allstate asserts that "while the Release *includes* the underlying judgment and interest, it is *not limited* to just that. On its face, the Release is a "complete satisfaction and release of all claims. . . ." (ECF No. 39, at 3.) Allstate's argument is well-taken.

However, even if the broad release language did not apply to the alleged conduct underlying Plaintiff's tortious interference claim, Plaintiff's evidence cannot support the allegation. Plaintiff's complaint rests on the allegation that Allstate "interfered with Plaintiff's ability to access his underinsurance coverage and medical payment coverage." (Compl., ECF No. 4, at p. 8, ¶ 28.) Regarding the medical coverage provision, the Stipulation of Facts filed by all the parties specifically states:

> 4.     Before the trial of the prior lawsuit [Injury Case], State Farm paid $13,796.69 to or on behalf of the Plaintiff under the medical payments coverage of his State Farm policy for Crook's medical treatment that occurred from February 2008 until May 5, 2009. *State Farm's medical payments payment was based on its own determination.*

(Stip. of Fact, ECF No. 31, at pp. 1-2, ¶ 4) (*emphasis supplied*). Thus, Plaintiff has stipulated that State Farm made *its own* medical payment determinations, and his assertion that Allstate interfered with the medical payments made by State Farm must fail.

Plaintiff also alleges that Allstate tortiously interfered with his UIM contract. However, in the Court's Judgment Entry in the Injury Case, Plaintiff acknowledged that his contractual right to access his UIM coverage did not accrue until after judgment was entered against Allstate:

> 2.     In the event that the case is tried to a verdict, and the verdict exceeds the underlying policy limits of $25,000 per person, $50,000  per accident,

> State Farm agreed to be bound by the verdict pursuant to the terms of its policy and subject to the applicable limits of underinsured motorist coverage. Plaintiff waives any claim to pre judgment interest, as the *contractual right to underinsured motorist coverage has not accrued prior to that date.*

(Judgment Entry, ECF No. 31-2, at p. 1, ¶ 2) (*emphasis supplied*). This comports with State Farm's assertion that its UIM policy could not come into effect until after Plaintiff had "exhausted" the "available liability insurance from Allstate through either settlement or judgment in order to trigger the application of the UIM coverage." (ECF No. 32, at 2.) The UIM provision of Plaintiff's policy states:

**Insuring Agreement**

\*\*\*

2. **We** will pay only if:

a. The limits of all bodily injury bonds, policies, and self-insurance plans that apply have been used up by payment of judgments;

\*\*\*

(ECF No. 34, at p. 1, citing the Certified State Farm policy, at p. 14.)

Ohio permits the use of such exhaustion clauses within UIM coverage provisions as a prerequisite to recovery under a UIM policy. *See Fulmer v. Insura Property & Casualty Company*, 94 Ohio St. 3d 85 (2002). Under the circumstances of the Injury Case, the Court finds as a matter of law that Plaintiff was not entitled to access his UIM proceeds until after settlement or a jury verdict in the Injury Case. Accordingly, Plaintiff's claim for tortious interference with his UIM policy must also fail.

**B. Count Two, Breach of Contract; Count Three, Breach of Implied Covenant of Good Faith and Fair Dealing; Count Four, Breach of Fiduciary Duty; and Count Five, Bad Faith against State Farm**

Against State Farm, Plaintiff asserts claims of "breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, and bad faith." (ECF No. 35, at p. 3; Compl., ECF No. 4, at pp. 8-11.)  Plaintiff asserts that "[t]hese claims do not result from the accident which occurred on July 31, 2007, but instead results [sic] from the Defendant's bad faith in dealing with its' [sic] insured, the Plaintiff." (ECF No. 35, at p. 3.)

In Ohio, mere refusal to pay an insurance claim is not, in itself, conclusive of an insurer's bad faith. *Helmick v. Republic-Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464. Rather, it is incumbent on the insured to prove that the insurer's refusal to pay a claim is "totally arbitrary and capricious and without reasonable justification." *Spremulli's Am. Serv. v. Cincinnati Ins. Co.,* 91 Ohio App.3d 317, 322, 632 N.E.2d 599 (1992). In *Spremulli*, plaintiff testified at deposition that he believed his insurance company acted in bad faith because it denied a claim. The Court held that such an assertion alone is not a basis for establishing bad faith. (*Id.*) In the case at bar, there is a dearth of evidence to support Plaintiff's claims. For one thing, Plaintiff's claims were paid. For another, Plaintiff has provided no evidence, through testimony or otherwise, upon which a jury could determine that State Farm acted arbitrarily or capriciously and without reasonable justification in its administration of Plaintiff's claims.

Plaintiff assents that, prior to filing his Complaint in the Injury Case, State Farm made medical payments under Plaintiff's medical coverage in the amount of $13,796.69 for medical bills that accrued between February 2008 and May 2009. (*Id.*)  However, Plaintiff asserts that "[n]o explanation was given as to why the Defendant stopped making medical payments for treatment in May 2009." (*Id.*)

Plaintiff's Complaint for breach of contract and breach of fiduciary duty states at Count Two, paragraph 31, and Count Four, paragraph 39, respectively:

31.   State Farm, Defendant Ratkiske and/or John Doe Employees wrongfully denied/refused to continue to offer medical payment coverage to allow the Plaintiff to receive reasonable and necessary medical treatment related to the July 31, 2007, [sic] wrongfully refused to pay the medical payment coverage limits and the underinsurance coverage limits prior to October 24, 2011 and/or wrongfully adopted Allstate/Defendant Aziz's theory that Plaintiff's injuries, damages and losses resolved/ceased to exist within four months of the accident after it/they determined the Plaintiff's injuries, damages and losses existed/continued until at least May 5, 2009.

                                    ***

39.   At all times relevant herein, State Farm, Defendant Ratkiske and/or John Doe Employees breached their fiduciary duty to Plaintiff by placing its own self-interest ahead of its insured, Plaintiff.

(Compl., ECF No. 4, at pp. 8-9.)

State Farm asserts that "the gist of the allegations is that State Farm acted in bad faith in not paying the remainder of the medical payments coverage and the UIM coverage prior to the underlying action." (ECF No. 32, at p. 7.) As discussed in Section III. A. above, the Court finds as a matter of law that Plaintiff's UIM coverage was not triggered under his policy until after settlement or a jury verdict, per the provisions of the insurance contract. Therefore, State Farm is entitled to summary judgment on all of the claims relating to the payment of UIM.

State Farm makes two additional arguments in support of summary judgment. First, it asserts that it is entitled to summary judgment because the facts establish that State Farm and Plaintiff entered into a binding settlement agreement as to how the Plaintiff's contractual claims would be resolved. (ECF No. 32, at p. 7.) The court in the Injury Case approved this agreement on February 25, 2011, and entered a Judgment Entry. In the Judgment Entry, the Court approved Plaintiff's dismissal of State Farm as a party to the action, and State Farm's dismissal of its cross claim against its co-defendants, without prejudice to refiling. (Judgment Entry, ECF No. 31-2, at

pp. 1-2.) The provisions of the Judgment Entry addressed the payments of Plaintiff's medical coverage as follows:

> 3.    Defendant State Farm Insurance Company has currently paid $13,796.69 in medical payments coverage for the plaintiff. In the event this matter proceeds to trial, the Court shall submit an interrogatory to the jury requesting the amount of the reasonable and necessary medical expenses incurred by plaintiff as a result of the accident that gives rise to this action. The plaintiff agrees to pay, and defendant agrees to accept in full payment of its right to repayment and subrogation, 2/3 of the amount of the jury's determination, up to 2/3s of the total amount of medical payments made by State Farm through the date of verdict.
>
> ***
>
> 5.    In the event that the verdict is in excess of $25,000, the plaintiff will escrow an amount equal to 2/3 of the jury's determination as to reasonable and necessary medical expenses. The plaintiff and State Farm will then re-evaluate the matter to determine what payments are required, if any, under underinsured motorist coverage, and what requirement, if any, plaintiff will have regarding repayments under the medical payments coverage. If the plaintiff and State Farm cannot agree, the matter will be submitted to the court as a post verdict motion for determination.

(*Id.*) The parties memorialized this agreement in the Stipulation of Facts filed in this case, as follows:

> 5.    Before the trial of the prior lawsuit, State Farm entered into an agreement with Crooks whereby State Farm generally agreed to be bound by the determination of damages in the trial if Crooks would agree to dismiss all claims against State Farm without prejudice subject to refiling. The specific terms of the agreement were recited in a Judgment Entry filed with the court on February 25, 2011 in the prior lawsuit. A true and accurate copy of the Judgment Entry is attached as Exhibit 2.

(Stip. of Facts, ECF No. 31, at p. 2.)

State Farm asserts that, per its agreement with Plaintiff to be bound by the jury's determination of damages, State Farm paid Plaintiff an additional medical payment of $2,898.85 following trial, representing the amount found by the jury in excess of the $13,796.69 that had already been paid by State Farm. (ECF No. 32, at pp. 5-6.) Furthermore, as part of Plaintiff's

settlement of all claims in the Injury Case, State Farm waived its right to subrogation for payments it made to Plaintiff under the medical payment coverage provision.  (*Id.*)  In short, State Farm asserts that its payments in accordance with these agreements satisfied all claims. Plaintiff has provided no evidence to rebut State Farm's assertion that the administration of the claims proceeded according to their agreements.

It is undisputed that State Farm's payments were memorialized in the Satisfaction of Judgment and Release of All Claims.  (ECF No. 31-4, at pp. 1-2.)  However, it is less clear that State Farm is a beneficiary of the broad release encompassed in that document.  The release provision states on its face that the Releasees are comprised of "Darlene M. Palmer, Allstate Insurance Company, its agents, attorneys, representatives, trustees, employees, affiliates, parents, subsidiaries, successors or assigns, servants and employees (hereinafter referred to as 'Releasees')."  (*Id.*, at p. 2.)  However, even if State Farm was not, in fact, a Releasee, it has provided undisputed evidence through the Stipulation of Facts that it acted in accordance with those agreements.

State Farm's second argument, building upon its first, is also availing.  State Farm asserts that the statute of limitations for a bad faith claim in Ohio is four years.  O.R.C. § 2305.09(D). (ECF No. 32, at p. 9.)  "[C]laims based upon a breach of the duty of good faith are tort claims and as such, are controlled by the four-year limitations period established by R.C. 2305.09(D)." *Bullet Trucking, Inc. v. Glen Falls Ins. Co*., 84 Ohio App.3d 327, 333 (1992).  Because Plaintiff filed this suit in the Court of Common Pleas on April 17, 2015, State Farm asserts that any conduct underlying any allegations of bad faith occurring before April 17, 2011 would be barred by the statute of limitations.  (ECF No. 32, at p. 9.)  State Farm asserts that on February 25, 2011, Plaintiff had entered into the settlement agreement filed as the Judgment Entry, which, by

agreement, dismissed State Farm from the Injury Case. Pursuant to the agreement, State Farm

asserts that its obligation to Plaintiff regarding payment of any additional medical coverage

amount was to "wait for a judgment establishing the amount of damages" and then pay pursuant

to the agreement. (ECF No. 32, at p. 10.) The parties have stipulated that:

> 8.     In November 2011 State Farm issued an additional Medical Payments
> coverage check to Plaintiff in the amount of $2,898.85. This amount
> represented the medical expenses awarded to Plaintiff by the jury which
> were incurred within three years after the July 31, 2007, accident but
> which had not previously been paid by State Farm.

***

> 10.    In March, 2012, State Farm settled Crooks' claim against it for
> $76,029.16, representing its $75,000 net underinsured motorist limit (the
> gross UIM limit of $100,000 less Allstate's $25,000 limit for Palmer) plus
> $1,029.16 in post-judgment interest.

(Stip. of Facts, ECF No. 31, at p. 2.)

It is thus undisputed that State Farm made all of the payments it was contractually

obligated to make, and that State Farm complied with all of its obligations under the settlement

agreement embodied in the Judgment Entry. There is simply no evidence that State Farm acted

in bad faith, let alone in any way that was "totally arbitrary and capricious and without

reasonable justification" in any of its dealings with Plaintiff between April 17, 2011 and April

17, 2015. Likewise, Plaintiff has presented no evidence upon which a reasonable jury could

return a verdict for Plaintiff on the remaining counts. *Anderson,* 477 U.S. at 248. Accordingly,

summary judgment for State Farm is appropriate on Plaintiff's claims against State Farm.

**C. Motion to Amend the Complaint**

After Defendant State Farm filed its motion for summary judgment (ECF No. 32) and

Defendant Allstate filed its motion for summary judgment or in the alternative, motion for

judgment on the pleadings (ECF No. 33), Plaintiff moved this Court for leave to amend his

Complaint pursuant to Fed. R. Civ. P. 15(a)(2). (ECF No. 37.) Defendant Allstate opposed Plaintiff's motion to amend the Complaint, asserting that the motions for summary judgment "argue, among other things, that plaintiff's claims were previously settled and released. Those arguments are dispositive of the entire case, and nothing in the proposed Amended Complaint changes that." (ECF No. 38, at p. 1.) Additionally, Allstate asserts that this is "not an appropriate time for the Complaint to be amended," noting that inasmuch as the dismissed parties (the adjusters) have already been dismissed, "[i]t is not necessary for plaintiff to file an Amended complaint to dismiss already dismissed parties." (ECF No. 38, at p 1.) In support of his motion, Plaintiff asserts that the amendment was to "address some of the issues raised by the Defendant's to dismiss [sic] this action." (ECF No. 37, at p. 2.) In an explanatory footnote, Plaintiff supports his motion for leave to amend the Complaint as follows:

> Allstate contends the Plaintiff's Complaint allegations are nothing beyond a mere formalistic recitation of the elements of his tortious interference of contract claim. The Plaintiff's amendments only clarify the allegations already set forth in a more deliberate manner.

(ECF No. 37, at p. 2, fn.1.) Indeed, a review of the proposed Amended Complaint reveals no new claims. (Am. Compl., ECF No. 37-1.) Rather, the Amended Complaint deletes the references to the individual insurance adjusters, and, among other small changes, adds language to refer to the defendant insurance companies and their "employees and agents."

Fed. R. Civ. P. 15(a) states that when a party is required to seek leave of court in order to file an amended pleading, "[t]he court should freely give leave when justice so requires." The United States Court of Appeals for the Sixth Circuit has spoken extensively on this standard, relying upon the decisions of the United States Supreme Court in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) and *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), decisions which give substantial meaning to the "when

justice so requires." In *Foman,* the Court indicated that the rule is to be interpreted liberally, and that in the absence of undue delay, bad faith, or dilatory motive on the part of the party proposing an amendment, leave should be granted.  However, the Court of Appeals has also identified a number of additional factors which the District Court must take into account in determining whether to grant a motion for leave to file an amended pleading. They include whether there has been a repeated failure to cure deficiencies in the pleading, and whether the amendment itself would be an exercise in futility. *Robinson v. Michigan Consolidated Gas Co.,* 918 F.2d 579 (6th Cir.1990); *Head v. Jellico Hous. Auth.,* 870 F.2d 1117 (6th Cir.1989).  In the case *sub judice,* Plaintiff has stated that the "amendments only clarify the allegations already set forth in a more deliberate manner." (ECF No. 37, at p. 2, fn.1.)   Even applying the proposed amendments, Plaintiff's claims cannot defeat summary judgment, for all of the reasons discussed in the analysis above. Accordingly, the amendment itself would be an exercise in futility, and Plaintiff's motion to amend his complaint will be denied.

### D.  Declaratory Judgment

In Count Six, Plaintiff seeks declaratory judgment to "determine the rights and obligations of the parties in and to the contract of insurance between Plaintiff and State Farm purchased by Plaintiff."  (ECF No. 4, at p. 11, ¶ 46.)  More specifically, Plaintiff asks the Court to conclude that State Farm "breached the contract of insurance between Plaintiff and State Farm." (*Id.* at ¶ 49.)  However, the Court has examined the Stipulation of Fact filed in this case, and finds that Plaintiff and State Farm stipulated that Plaintiff and State Farm agreed to the administration of Plaintiff's insurance contract, and the agreement was memorialized in a Judgment Entry in the Injury Case. (Stip. of Facts, ECF No. 31, at p. 2, ¶5.)  The parties "rights and obligations" were agreed to and memorialized in the Judgment Entry in the Injury Case.  Accordingly, for this

reason and for the reasons discussed in the Opinion above, Plaintiff's request for declaratory judgment will be denied.

## IV.    CONCLUSION

For the reasons set forth above, Defendant State Farm's Motion for Summary Judgment (ECF No. 32) is **GRANTED** and Defendant Allstate's Motion for Summary Judgment (ECF No. 33) is **GRANTED**.  Plaintiff's Motion for Leave to file an Amended Complaint (ECF No. 37) is **DENIED** as futile.  Plaintiff's request for Declaratory Judgment (ECF No. 4) is **DENIED.**  The Clerk is directed to enter judgment in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

_____8 -17- 2016_____
**DATE**

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**

22